E-FILED
Monday, 17 August, 2026 03:42:37 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

UNITED STATES OF AMERICA,
Plaintiff,

v.

SPENCER CONRAD OTTLEY,
Defendant.

Case No. 4:03-cr-40093-JEH

**Order**

Now before the Court is Spencer Conrad Ottley's Motion for Discharge from Conditional Release. (D. 81).[1] For the reasons stated *infra*, the motion is denied.

**I**

**A**

On January 20, 2004, following a bench trial, the Court found Ottley not guilty by reason of insanity on three counts of impersonating a Secret Service agent, remanded him to the custody of the Attorney General for further examination, and set a hearing pursuant to 18 U.S.C. §§ 4243 and 4247. On January 20–21, 2004, the Court adjudicated Ottley not guilty by reason of insanity, ordered commitment for examination under 18 U.S.C. § 4243(a) and § 4247(b)–(c), and scheduled the ensuing hearing. On July 2, 2004, after receipt of the evaluation, the Court committed Ottley to the custody of the Attorney General for hospitalization and treatment under 18 U.S.C. § 4243(e) and, on July 8, 2004, entered an order committing him to the Attorney General's custody.

[1] Citations to the electronic docket are abbreviated as "D. __."

Following a hearing on April 6–7, 2005, the Court ordered Ottley conditionally released pursuant to § 4243(f) and entered an Order of Conditional Release on April 21, 2005. On July 24, 2008, the Court issued a warrant for Ottley's arrest to show cause or for re-evaluation of suitability for continued conditional release, and on September 9, 2008, ordered him committed for study and observation; subsequent proceedings included a competency hearing on January 9, 2009, after which the Court set an evidentiary hearing on release status for March 4, 2009.

On December 10, 2009, after hearings and receipt of a proposed plan, the Court again ordered Ottley conditionally released under a prescribed regimen of treatment. On January 12, 2010, the Court ordered Ottley's release from local custody for transport to Colorado Springs to report to U.S. Probation, and on June 3, 2011, ordered that he continue under supervision following the annual report.

On January 31, 2014, the Court issued another arrest warrant upon a petition for warrant, and after an initial appearance and proceedings, on August 4–6, 2014, the Court revoked Ottley's conditional discharge under 18 U.S.C. § 4243(g) and committed him to the custody of the Attorney General for placement in a suitable facility. From 2015 through 2020, the Court periodically received sealed risk assessment materials; on October 16 and 26, 2020, the Court received a Certificate of Improved Mental Health recommending conditional release and directed the parties to prepare, and then entered, an order for conditional release consistent with the risk assessment panel's recommendations.

On March 24, 2026, Ottley moved for discharge from conditional release; on April 9, 2026, the Court granted leave to file under seal and directed the Government to respond, on April 20, 2026, extended the Government's response deadline to May 26, 2026, and on May 26, 2026, the Government filed its response along with a motion to seal exhibits, which the Court granted on May 27, 2026.

**B**

**1**

Ottley has a longstanding history of serious mental illness, with Bipolar I Disorder diagnosed in 1985 following an initial hospitalization after returning from Japan, and his bipolar presentation has included manic episodes marked by racing thoughts, euphoria, grandiosity, delusions, and intermittent mild depression. In early 1997, a forensic evaluation diagnosed bipolar disorder, alcohol, cocaine, and hallucinogen abuse, and Narcissistic Personality Features.

Key mental health evaluations and assessments in the record repeatedly link Ottley's manic symptomatology and treatment noncompliance to risk. A May 17, 2004, Risk Assessment Panel Report concluded that Ottley's unconditional release would pose a substantial risk of bodily injury to others or serious damage to property, but that conditional release under a prescribed regimen could be appropriate. A December 15, 2008, forensic evaluation found Ottley competent, opined that unconditional release would present a substantial risk of bodily injury to another person or serious property damage, but that conditional release under prior conditions would not, and noted a moderate Psychopathy Checklist-Revised score associated with elevated risk factors. A June 29, 2016, Risk Assessment Panel Report identified ongoing medication noncompliance, minimization of prior behaviors, and concluded that community release would create a substantial risk of bodily injury to another person or serious property damage. A May 18, 2017, Risk Assessment Panel Report continued to find Ottley unsuitable for conditional release due to repeated failures to take medication as directed and refusals to participate in treatment, with noted delusional ideation and poor insight and judgment. Subsequent panel reports in 2018, 2019, and 2020 moved toward conditional release as planning matured, culminating in an October 16, 2020, Certificate of Improved Mental Health with proposed conditions.

**2**

The underlying offense conduct occurred in June 2003 during a manic episode after a period of speeding incidents *en route* from Colorado. Ottley was charged in this case with three counts of impersonating a Secret Service Agent based on June 21, 2003, conduct in Moline, Illinois, after he crashed his vehicle and, claiming to be a Secret Service agent, took a Chevrolet Blazer and then a Chevrolet Silverado from motorists stopped in traffic. When stopped by a Moline police officer, Ottley asserted he was a Secret Service agent, resisted identification, struck the officer in the chest, attempted to flee, and continued to advance until he was maced and handcuffed.

Following a bench trial on January 20, 2004, the Court found Ottley not guilty by reason of insanity on all three counts and committed him pursuant to 18 U.S.C. § 4243 for examination and proceedings. On July 2, 2004, the Court committed Ottley to the custody of the Attorney General for treatment under § 4243(e), and he was later conditionally released in April 2005 under a prescribed regimen.

Ottley's history on conditional release reflects periods of compliance interspersed with significant violations and revocations. After his first conditional release in May 2005, Ottley remained compliant for approximately three years before a July 22, 2008, arrest in Colorado Springs for impersonating a peace officer and attempting to commandeer vehicles, during which his probation officer reported he appeared psychotic and disoriented. He was returned to this District, evaluated, and, after stabilization, was again conditionally released on December 15, 2009, to supervision in Colorado.

In January 2014, while on conditional release, Ottley used marijuana, ingested his mother's Dilaudid, consumed alcohol, displayed a pistol at a bar, and then pointed the pistol in a gas station in the general direction of an employee and

a female customer with a child, leading to arrest and subsequent revocation of conditional discharge on August 4, 2014. He was recommitted to the custody of the Attorney General, placed at FMC Devens in 2015, and remained hospitalized for years amid documented medication noncompliance and treatment refusal before later panel reports contemplated conditional release. On October 26, 2020, the Court ordered conditional release pursuant to the Bureau of Prisons' recommendations.

**3**

Regarding the most recent period of conditional release, the record shows both sustained community functioning and troubling episodes tied to mania and medication issues. Ottley was conditionally released in December 2020, initially resided in Illinois, then relocated to live with his parents in South Carolina, with primary supervision transferring to the District of South Carolina in 2022 and additional conditions imposed.

From June 2022 until late February 2024, supervising authorities reported he did well under supervision with treatment engagement and compliance. On February 28–29, 2024, Ottley experienced a manic episode, reported feeling manic, was evaluated, and then transported for inpatient treatment after he pushed his father causing minor back injuries while expressing delusional beliefs, including that he was a samurai and would become a trillionaire. Records reflect that during this episode he threatened to cut off his father's head, his mother told 911 that he was violent and threatening to chop their heads off, and he was admitted with THC-positive screening and noted medication noncompliance as a patient limitation. After discharge on March 9, 2024, Ottley told his nurse practitioner that he discontinued all prescribed medications from the hospitalization because he did not like them, and subsequent visits documented resistance to medication adjustments and gaps in follow-up through late 2024 and early 2025 amid family

reports of continued instability. In March and July 2025, his provider documented concerns regarding Ottley's limited insight into the severity of his bipolar disorder, questions about medication adherence raised by his mother, and behaviors consistent with a manic episode without psychosis, after which Ottley agreed to initiate and titrate lithium with some reported improvement.

A March 10, 2025, annual probation report stated Ottley was doing very well, actively participating in treatment, maintaining full-time employment, fully compliant with conditions, and that South Carolina probation would not object to termination of supervision. However, the Government's May 26, 2026, response noted that more recent treatment records beyond July 2025 were not provided, that probation reported he moved out of his parents' home in February 2026, and that probation's statement that no manic symptoms occurred since February 2024 was inconsistent with the provider and family reports of late 2024 to mid-2025 instability.

**II**

Ottley moves for discharge from conditional release under 18 U.S.C. § 4243(f), asserting that his current stability, consistent treatment compliance since December 2020, sustained employment, and established support system demonstrate that his release would not create a substantial risk of bodily injury to another person or serious property damage due to a present mental illness, and that he can meet the governing standard by a preponderance of the evidence because his original § 912 offenses neither involved actual bodily injury nor a substantial risk thereof.

He points to his successful participation in outpatient care in South Carolina, regular medication management with providers, steady full-time work with Harris Teeter since December 2023, and proactive response to a February 2024 manic episode by self-reporting symptoms, following probation's direction,

and accepting inpatient treatment with medication adjustments before discharge on March 9, 2024, after which he returned to compliance. He emphasizes that his supervising probation officer in the District of South Carolina reported in March 2025 that he was fully compliant, actively engaged in treatment, maintained full-time employment, and that the district had no objection if the Central District of Illinois considered termination of supervision.

Ottley further notes that his aggregate confinement of approximately 124 months in federal custody and 150 months on conditional release far exceeds the maximum custodial and supervised release exposure associated with three § 912 counts and argues that ongoing federal supervision is unnecessary given his motivation to maintain treatment, family support, church involvement, and plans for independent living.

The Government opposes discharge and requests denial without a hearing or, alternatively, after a hearing required by § 4243(f), arguing that Ottley's decades-long history of bipolar disorder, repeated medication noncompliance, substance abuse, and dangerous conduct during manic episodes demonstrate a continuing need for conditions and supervision to protect the public. It recounts prior episodes including the 2003 carjackings and assault on a police officer during a manic state; a 2008 Colorado incident involving Secret Service impersonation and attempted vehicle taking while standing in interstate traffic; and a 2014 episode where Ottley possessed a loaded pistol, pointed it at a clerk, a customer, and a four-year-old child, alongside drug and alcohol use, leading to revocation of conditional release in this case.

The Government further highlights a February 2024 manic episode in South Carolina during which Ottley pushed his 83-year-old father to the ground and threatened to behead him while claiming to be a samurai, with records noting THC positivity and medication noncompliance concerns; subsequent treatment notes

through July 2025 reflect additional mood instability, disputed medication adherence, and financial and behavioral issues consistent with mania, notwithstanding attempts to titrate lithium. It argues a hearing is required to eliminate the treatment regimen when the Government objects, that Ottley has not shown material changes warranting termination, that his prior unconditional release in December 2002 was followed within six months by the instant offense, and that his current conditions are minimally burdensome and align with his stated intent to continue treatment, especially as parental monitoring has diminished since his February 2026 move from his parents' home.

**III**

**A**

Title 18, Section 4243 provides that after a criminal defendant has been found not guilty by reason of insanity, the district court is required to commit the defendant to a "suitable facility" until such time as he is eligible for release. 18 U.S.C. § 4243(a). When a defendant is eligible for release, the court must make a determination that release "would not create a substantial risk of bodily injury to another person or serious damage to property of another . . .." 18 U.S.C. § 4243(e). If the court makes that determination, the statute allows for either the person's "release, or his conditional release. . .." 18 U.S.C. § 4243(e)(2). Because Mr. Ottley has previously been released under § 4243(f)(2), this Court "at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment." 18 U.S.C. § 4243(f). The statute allows for ongoing monitoring through an order of conditional release or a discharge of the defendant completely. *United States v. Jain,* 174 F.3d 892, 896 (7th Cir. 1999).

District courts are given "great latitude" in determining when a mentally ill defendant should be released, either conditionally or unconditionally. *Jain,* 174

F.3d at 898; *citing United States v. Jones,* 463 U.S. 354, 367 (1983). Under § 4243, the defendant bears the burden of proving his release is appropriate and that he does not pose a "substantial risk" of injury to another person or property. *See* 18 U.S.C. § 4243(d). Subsection 4243(f) incorporates the standard set forth in subsection (d) regarding the burden of proof.

In that regard, subsection 4243(d) places that burden on the defendant, by either clear and convincing evidence or by a preponderance of the evidence, depending on the nature of the underlying charge. Specifically, pursuant to subsection (c) of this section, a person found not guilty only by reason of insanity of an offense involving bodily injury to, or serious damage to the property of, another person, or involving a substantial risk of such injury or damage, has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect. With respect to any other offense, the person has the burden of such proof by a preponderance of the evidence. 18 U.S.C. § 4243(d).

**B**

As an initial matter, the Court concludes the appropriate burden of proof is that the defendant must demonstrate by a preponderance of the evidence his discharge from conditional release "would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." *See* 18 U.S.C. § 4243(d). Ottley's charged offenses were three counts of impersonating a Secret Service Agent under 18 U.S.C. § 912. That statute provides that a defendant commits the offense if he "falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of

value . . ..” 18 U.S.C. § 912. As a categorical matter and as Ottley argues, the elements of the offense do not involve bodily injury or damage to property.

Regarding his actual conduct in this case, nothing in the record establishes that his offense conduct “involved[] a substantial risk of [bodily injury to, or serious damage to the property of, another person]” as a matter of fact. *See* 18 U.S.C. § 4243(d). As Ottley argues, there was no actual bodily injury to or serious damage to the property of another person in any of the charged offenses, or, at least, nothing in the record now before the Court suggests there was.[2]

**C**

Given Ottley’s history, he fails to meet his burden.

The Court acknowledges the very substantial period Ottley has spent either in custody or on conditional release and recognizes his frustration that these periods exceed what he believes would have been served upon a conviction for the charged offenses. Ottley asserts he has spent 124 months in federal prison and 150 months on conditional release, exceeding the statutory maximum custodial and supervised release terms he would have faced on three § 912 counts. But Congress has expressly authorized the post-acquittal framework applicable to insanity acquittees to protect the public, and this Court applies that statute rather than revisiting Congress’s policy choices.

Ottley’s history reflects repeated cycles of conditional release followed by revocation or return to custody, with multi-year periods of relative stability giving way to decompensation. After his 2004 NGRI adjudication in this case, Ottley was conditionally released in May 2005, remained largely compliant for about three years, and then, in July 2008, during a manic episode while noncompliant with

[2] The Court notes that because it concludes that Ottley fails to meet his burden under the lesser preponderance of the evidence burden, he *ipso facto* would also fail to meet the higher clear and convincing evidence burden. Accordingly, the outcome here is not dependent on which burden the Court uses.

medication, impersonated a federal agent and attempted to obtain vehicles, prompting arrest and his return to federal custody.

He was again conditionally released in January 2010 and did well for approximately four years before a January 2014 relapse that included substance use and menacing conduct with a loaded pistol at a bar and convenience store, resulting in revocation and recommitment under § 4243(g). Following extended treatment at FMC Devens and difficulty achieving consistent medication adherence, he was conditionally released again in December 2020. Thus, the pattern is one of initial stabilization on release for roughly three to four years followed by decompensation and dangerous behavior leading to renewed custody and treatment.

More recent events reinforce the continuing risk if supervision is removed. In late February 2024, Ottley reported feeling manic; the next day his mother summoned law enforcement after he forcefully pushed his then-83-year-old father, causing back injuries, while expressing grandiose and violent delusions including that he was a samurai and threatening to behead his father. Medical records from that episode reflect concerns about medication noncompliance and a positive THC screen on admission. After discharge on March 9, 2024, he unilaterally discontinued medications he disliked and, over ensuing months, resisted recommended mood-stabilizing agents, missed scheduled follow-ups, and exhibited additional mood-instability episodes reported by his mother in December 2024 and March 2025. Treatment notes in July 2025 document impulsive, risky financial behavior consistent with a hypomanic or manic state and an ongoing need to titrate lithium to achieve stability.

The Court also considers Ottley's favorable evidence. He has maintained employment at Harris Teeter since December 1, 2023, has engaged in treatment, and, in March 2025, the supervising probation officer in South Carolina reported

full compliance and expressed no objection to termination being considered. Probation further reported in April 2026 that he had moved from his parents' home to live with roommates, maintains daily contact with his parents, and continues psychiatric care following closure of his prior group-therapy provider. These positive developments are commendable and carry weight. Yet, in light of the demonstrated pattern of decompensation after multi-year stability, the recency and severity of the February 2024 violence and threats, subsequent medication-adherence concerns, and documented additional instability into 2025, the benefits of continued structured supervision and enforced treatment outweigh the risk of removing those safeguards now.

Although Ottley indicates he intends to continue his treatment regimen voluntarily if discharged, the Court is not persuaded that voluntary adherence alone will adequately mitigate the risk to public safety given his history. The record shows that when court-ordered conditions have lapsed or adherence has depended on his voluntary choices, Ottley has repeatedly ceased or inconsistently taken prescribed medications, leading to manic episodes associated with dangerous conduct. Continued conditional release ensures accountability, monitoring, and adherence to a prescribed regimen for Ottley's benefit and for the protection of the public. For these reasons, applying § 4243's standard, the Court concludes Ottley has not demonstrated by a preponderance of the evidence that unconditional discharge would not create a substantial risk of bodily injury to another person or serious damage to the property of another due to his present mental disease or defect.[3]

---

[3] The parties dispute whether the Court may discharge a defendant from conditional release without first conducting a hearing. However, both parties agree that a Court may *deny* a motion for discharge without a hearing. Because this Court denies Ottley's motion, it need not resolve the disputed issue between the parties. Additionally, although some of the facts cited herein come from assertions made only in one party's filings, neither party has directed the Court to any dispute regarding the facts in this case.

## IV

For the reasons stated *supra*, the motion for discharge from conditional release (D. 81) is denied.

*It is so ordered.*

Entered on August 17, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE